MICHAEL MORRISSEY, APPELLEE, v. GLENN C. WHARTON, APPELLANT.

FILED JUNE 18, 1915. No. 18166.

1. **Negligence:** REFUSAL TO DIRECT VERDICT. Evidence examined, and *held* that, since different minds may reasonably draw a different conclusion as to the negligence of defendant from the facts established, it was not erroneous for the trial court to refuse to direct a verdict in his favor.

2. **Trial:** REFUSAL TO STRIKE ANSWER. It is not error to overrule a motion to strike all of an answer to a question, where a part of the answer is competent, material, relevant and responsive.

3. ———: INSTRUCTIONS. A judgment will not be reversed for the reason that a portion of an instruction is not exactly accurate, when the charge, taken as a whole, fairly submits the issues in the case to the jury.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed on condition.*

*Greene, Breckenridge, Gurley & Woodrough,* for appellant.

*Mahoney & Kennedy,* contra.

LETTON, J.

Action to recover for personal injuries. Plaintiff recovered a judgment for $5,000. Defendant appeals.

The plaintiff, a boy about 9 years of age, was engaged as a caddy on the grounds of the Omaha Country Club, adjoining the city of Omaha. There is a paved street north of the club-house running east and west, called Main street. Rosehill avenue lies to the west of the club-house, and runs at right angles to Main street. The club-house stands diagonally across the corner between these streets a short distance from the intersection. The usual entrance and exit for automobiles is from the east. Along the sides of the streets and abutting thereon back of the club-house are automobile sheds entered from the yard of the house. South of that part of the automobile shed which abuts upon Rosehill avenue is the caddy house, with a narrow paved driveway between it and the end of the automobile sheds. This leads from the back of the club-house to Rosehill avenue, and is used upon week days for delivery wagons, but on Sundays by automobiles to some extent. On Sunday, May 18, 1908, about 1 o'clock P. M., the defendant had backed his automobile out from the sheds into the yard, and, instead of passing out to the eastward, he drove to Rosehill avenue through the narrow driveway between the sheds and the caddy house. It was customary at that hour on Sunday for the caddies to be in and playing about the caddy house, yard and adjacent street, and they usually

entered the grounds through this driveway. Defendant is a member of the club, and was familiar with these conditions. A door opened into the street a few feet from the north end of the caddy house. About the time defendant was taking his machine from the shed, plaintiff, with a number of other boys, was in the caddy house. A boy named Doll, in playing, chased the plaintiff out of the west door and north along the west side of the caddy house towards the driveway. Defendant was driving out, moving at the rate of about 4 miles an hour. The boy, Doll, who is about 15 years old, testified that plaintiff had just entered the driveway when he was struck by defendant's automobile; that the front wheel ran over him; that he pulled him out, and the back wheels went over the spot that he pulled him from; that the automobile passed along the street as far as the other side; and that no horn had been sounded or was being sounded when the accident occurred. On cross-examination he testified that he did not see the machine until it struck plaintiff, and that there is just about room enough for one to stand in the driveway when an automobile goes through; it being 10 or 12 feet wide. It is clearly shown by other testimony that the automobile was stopped when the boy was drawn out, and immediately started again by defendant, who rushed for a doctor, while the boy was cared for by bystanders. There is practically no dispute as to the facts, except as to the sounding of a warning signal.

A motion was made at the close of the testimony to instruct the jury to return a verdict for the defendant, which was overruled. It is asserted that this was erroneous, since there was no evidence to support the verdict. Defendant concedes the rule that, if different minds may reasonably draw different conclusions or inferences from the state of facts established by the evidence, the case must be submitted to the jury, but insists that it would be impossible for normally constituted minds to reasonably draw different conclusions. We are unable to take this view. The evidence of defendant's witnesses is to the effect that, after he backed his machine out from under the shed and was

just about starting it forward through the driveway, he
sounded his horn once or twice, but gave no further signal.
The testimony varies as to where the machine was at this
time.   Defendant testified that he sounded it about the
corner of the shed, while another witness testified it was
sounded at a distance of 20 to 30 feet from the gate, and
another that it was just as he was starting forward.   On
the other hand, the boy, Doll, testified that no horn was
sounded, and that he could have heard it if it had been
sounded.   The probability of this boy hearing the horn
if sounded seems doubtful, since he was either in the caddy
house, or running after the other boy, with the caddy
house between him and the automobile, and his attention
probably absorbed by the chase when the other witnesses
say defendant sounded it.   The weight of this evidence was
for the jury.   Even without considering his evidence as of
any force, we think it was still a question for the jury to
determine, considering the facts that it was an hour when
from 30 to 50 boys might be expected to be playing around
these buildings and in the street, that the door of the caddy
house opened to the west close to the corner, from whence
boys might be expected heedlessly to emerge at any mo-
ment, and considering the narrowness of the driveway,
whether, under all the circumstances, the defendant exer-
cised due care in merely signaling when he started, and
not continuing to sound his horn until he passed the cor-
ner of the caddy house.   The question whether the defend-
ant exercised due care in giving warning is one upon which
reasonable minds might differ, and the motion to instruct
was properly overruled.

It is said the evidence will not support a verdict, for
the reason that the defendant and three other witnesses
testified that the automobile was moving slowly, and that
as it came out the plaintiff, running very fast, came to
the corner of the caddy house, tried to stop himself, and
slid under the wheels.   But the question as to the lack of
care with respect to giving of a signal remains, and the
fact, if conceded, that the boy tried to stop and slid under
the wheel, is not material, unless this had concurred with

the exercise of due care by the defendant in giving a sufficient signal of his approach.

Error is assigned on account of the refusal of the court to sustain objections to certain questions put to medical witnesses, and in refusing to strike certain answers to such questions. The principal question which was answered requested the doctor to state "the results which, with a reasonable degree of certainty, might follow from a fracture" such as the plaintiff sustained. This does not ask for a mere conjecture, as defendant asserts. The doctor answered, in part, that such an injury "would leave a certain amount * * * of scar tissue, abnormal cells," and that such a location would be more susceptible to bad effects as a result of some diseases, such as typhoid, than a healthy bone would be; that such an injury is sometimes followed by the development of malignant diseases, such as sarcoma.

A motion to strike the answer was overruled. Part of the answer was strictly competent, relevant, and responsive to the question. It was not erroneous, therefore, to refuse to strike it all. *Brown v. Chicago, B. & Q. R. Co.,* 88 Neb. 604. On cross-examination the doctor stated that, in order for any of these conditions to develop, the diseases themselves would have to occur; that he could not tell in advance that the injury would cause sarcoma; and that he would say it had not happened in the majority of cases. Taking all the testimony together, we think no prejudice occurred.

Complaint is made as to certain instructions, but, considering the charge as a whole, we think the issues were fairly submitted to the jury.

It is complained that the verdict is excessive. The plaintiff was 9 years old at the time of the accident. He received a slight fracture of the left leg, which seems to have made a complete union. He suffered considerable pain, had the leg placed in a plaster cast for about six weeks, and was on crutches a little longer. He was very nervous after the accident, and to some extent to the time of the trial, and has not made as good progress in school

afterwards as before. It is not shown that any permanent injury will result, except such as is the usual accompaniment of a broken bone in boyhood.

We are of the opinion that the recovery is excessive, and that the verdict should be set aside for that reason, unless the plaintiff remit the sum of $2,500 within 40 days, in which event the judgment of the district court will be

AFFIRMED.

ROSE, SEDGWICK and HAMER, JJ., not sitting.